UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PETER J. CORINES,

                              Plaintiff,

              -against-

THE WESTCHESTER COUNTY DEPT. OF
CORRECTION, ET AL.,

                              Defendants.

22-CV-5179 (LTS)

ORDER TO AMEND

LAURA TAYLOR SWAIN, Chief United States District Judge:

       Plaintiff brings this action *pro se*, asserting claims under 42 U.S.C. § 1983. Plaintiff's

claims arose during his incarceration at Westchester County Jail, from December 2018 to August

2019. By order dated September 8, 2022, the Court granted Plaintiff's request to proceed *in*

*forma pauperis* (IFP), that is, without prepayment of fees.[1] For the reasons set forth below, the

Court grants Plaintiff leave to file an amended complaint within 60 days of the date of this order.

## STANDARD OF REVIEW

       The Court must dismiss an *in forma pauperis* complaint, or any portion of the complaint,

that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks

monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B);

*see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must

also dismiss a complaint when the Court lacks subject matter jurisdiction of the claims raised.

*See* Fed. R. Civ. P. 12(h)(3).

---

[1] Prisoners are not exempt from paying the full filing fee even when they have been
granted permission to proceed *in forma pauperis*. *See* 28 U.S.C. § 1915(b)(1).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original). But the "special solicitude" in *pro se* cases, *id*. at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

Rule 8 of the Federal Rules of Civil Procedure requires a complaint to include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Twombly*, 550 U.S. at 555. After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.*

## BACKGROUND

The following allegations are from Plaintiff Peter Corines's complaint. Plaintiff was incarcerated in Westchester County Jail for approximately eight months – from December 12, 2018 to August 7, 2019.[2] Throughout his incarceration, Plaintiff had problems with his mail. His

---

[2] According to public records, a judgment of conviction, pursuant to Plaintiff's guilty plea, was entered in the Supreme Court, Westchester County on March 28, 2019. *People v.*

subscriptions to *The New York Times*, *The Wall Street Journal*, and *Barron's Weekly* were delivered to him late or not at all. Some publications arrived damaged or out of sequence. Correction Officers picked up the mail when convenient for them, such as during their lunch time, or at the beginning or end of a shift, and thus Plaintiff's mail was sometimes delivered in "batches." (ECF 2 at 3.)

In addition, on one occasion, Plaintiff did not receive a return receipt for his outgoing legal mail. On June 11, 2019, Plaintiff sent mail to the Appellate Division and the Westchester County District Attorney. He did not receive the return receipt for his mail to the Appellate Division.[3] (*Id.* at 4, 34.)

The mail room also "failed to keep a record" that six books had been returned to Plaintiff's home. (*Id.* at 4) As a result, Correction Officers refused to deliver additional books to Plaintiff on the ground that he had exceeded the five-book limit, even though "they knew" that he had only two books in his cell.[4] (*Id.*) Moreover, this treatment was unfair to Plaintiff because another inmate had "dozens of paperback books in his cell." (*Id.*)

On several occasions, Plaintiff was denied access to the law library during periods when, according to the Prison Manual, the law library was scheduled to be open. In Plaintiff's

---

*Corines*, 204 A.D.3d 827, 827 (2022), *lv denied*, 2022 WL 3362684 (N.Y. July 11, 2022). It therefore appears that, during some of the period in which his claims arise, he was at some points a pretrial detainee and at others a convicted prisoner.

[3] Plaintiff attaches a copy of his form authorizing postage for a mailing to the DA, on which the "return receipt" box is checked (ECF 2 at 42); he also attaches an undated form for his mailing to the Appellate Division, on which the "return receipt" box is not checked (*id.* at 41.)

[4] Plaintiff attaches Sergeant Hurley's response to his grievance, which states that Plaintiff must complete a property disposal form if he wished to have books taken off the list of property in his cell. (ECF 2 at 30.)

grievances, he indicates that often he was not given access to the law library until the evening, after medication had been distributed. (*Id.* at 37-38.)

On April 25, 2019, Plaintiff submitted a complaint form to Sergeant Rhodes "concerning harassment and threatened physical harm and requested protection." (*Id.* at 5.) Plaintiff states that he "never received a response." (*Id.*) Plaintiff attaches to the complaint a statement from Sergeant Reyes, who writes that Plaintiff had submitted a grievance indicating that "several inmates who were housed with [him] in F-unit were threatening" him. (*Id.* at 49.) Sergeant Reyes explained that, although Plaintiff had submitted a grievance form, the matter was not treated as a grievance because the purpose of the grievance process "is not for inmates to grieve each other," and Plaintiff was instead directed to file an Inmate Statement Form, which he did. (*Id.* at 49.) As a result, according to Sergeant Reyes, he "moved [Plaintiff] to another housing unit for [his] safety." (*Id.*)

Plaintiff alleges that, on May 10, 2019, he "wrote to Assistant Warden Carl Vollmer about Air Conditioning which was continually operated during cold weather. Indoor air temperature was very cold for over one week." (*Id.* at 5.) He attaches a copy of his grievance dated May 11, 2019, regarding the cold temperatures that week. (*Id.* at 45.) Plaintiff indicates that this grievance was denied on the ground that it was "vague and lacking supporting information." (*Id.* at 5.)

Plaintiff sues the Westchester County Department of Correction, Commissioner Spano, the Warden of the Westchester County Jail, and twenty correction officers and sergeants employed at the Westchester County Jail. He seeks damages.

## DISCUSSION

**A.      Proper Defendants**

1.      Westchester County Department of Corrections

Plaintiff's claims against the Westchester County Department of Corrections (DOC) must

be dismissed because, under New York law, agencies or departments of a municipality do not

have the capacity to be sued. *See Omnipoint Commc'ns, Inc. v. Town of LaGrange*, 658 F. Supp.

2d 539, 552 (S.D.N.Y. 2009) ("In New York, agencies of a municipality are not suable entities.");

*Hall v. City of White Plains*, 185 F. Supp. 2d 293, 303 (S.D.N.Y. 2002) ("Under New York law,

departments which are merely administrative arms of a municipality do not have a legal identity

separate and apart from the municipality and cannot sue or be sued."); *see also* N.Y. Gen. Mun.

Law § 2 ("The term 'municipal corporation,' as used in this chapter, includes only a county,

town, city and village."). If Plaintiff files an amended complaint, any claims that he wishes to

assert against Westchester County DOC must be brought against the County of Westchester.

The Court notes, however, that when a plaintiff sues a municipality, such as Westchester

County, under Section 1983, it is not enough for the plaintiff to allege that one of the

municipality's employees or agents engaged in some wrongdoing. The plaintiff must show that

the municipality itself caused the violation of the plaintiff's rights. *See Connick v. Thompson*,

131 S. Ct. 1350, 1359 (2011) ("A municipality or other local government may be liable under

this section [1983] if the governmental body itself 'subjects' a person to a deprivation of rights or

'causes' a person 'to be subjected' to such deprivation.") (quoting *Monell v. Dep't of Soc. Servs.*

*of City of New York,* 436 U.S. 658, 692 (1978)); *Cash v. Cnty. of Erie,* 654 F.3d 324, 333 (2d Cir.

2011).

In other words, to state a Section 1983 claim against a municipality, the plaintiff must

allege facts showing (1) the existence of a municipal policy, custom, or practice, and (2) that the

policy, custom, or practice caused the violation of the plaintiff's constitutional rights. *See Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012); *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown,* 520 U.S. 397, 403 (1997) (internal citations omitted).

2.      Individual defendants

A plaintiff asserting a claim under Section 1983 against individual governmental employees must allege facts showing the defendants' direct and personal involvement in the alleged constitutional deprivation. *See Spavone v. N.Y. State Dep't of Corr. Serv.*, 719 F.3d 127, 135 (2d Cir. 2013) ("It is well settled in this Circuit that personal involvement of defendants in the alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.") (internal quotation marks omitted). A defendant may not be held liable under Section 1983 solely because that defendant employs or supervises a person who violated the plaintiff's rights. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."). Rather, "[t]o hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official . . . ." *Tangreti v. Bachmann*, 983 F.3d 609, 620 (2d Cir. 2020).

Plaintiff names as Defendants Commissioner Spano, the Warden, and twenty other employees of the Westchester County Jail. Plaintiff alleges generally that defendants violated his rights but does not allege facts showing what each defendant personally did or failed to do. For example, Plaintiff alleges that defendants refused to deliver additional books to his cell, on the ground that it would exceed the five-book limit, even though "they knew" that he had only two books (ECF 2 at 4), but he does not identify which defendants were personally involved in doing so. Similarly, he alleges that "in retaliation for submitting numerous grievances, [he] was denied access to the Law Libraries during the times specified in the Prison Manual," but he does not

identify the defendant(s) alleged to have retaliated against him. If Plaintiff amends his complaint to replead his claims he must identify separately what each defendant is alleged to have personally done or failed to do that violated Plaintiff's rights.

## B.     Timeliness

The statute of limitations for Section 1983 claims is found in the "general or residual [state] statute [of limitations] for personal injury actions." *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002) (quoting *Owens v. Okure*, 488 U.S. 235, 249-50 (1989)). In New York, that period is three years. *See* N.Y. C.P.L.R. § 214(5). Section 1983 claims generally accrue when a plaintiff knows or has reason to know of the injury that is the basis of the claim. *Hogan v. Fischer*, 738 F.3d 509, 518 (2d Cir. 2013).

Plaintiff filed this complaint on June 17, 2022. Some of the claims that he brings arose, in whole or in part, more than three years earlier. For example, Plaintiff's claims regarding cold temperatures during the week of May 2019, and his claim that in April 2019, he was at risk of harm from other prisoners, arose before June 2019. Plaintiff also asserts claims regarding delays in mail delivery that took place from December 12, 2018, until his release on August 19, 2019. Plaintiff's claims arising more than three years before he filed this action thus appear to be time-barred, unless equitable tolling applies.

The doctrine of equitable tolling permits a court, "under compelling circumstances, [to] make narrow exceptions to the statute of limitations in order 'to prevent inequity.'" *In re U.S. Lines, Inc.*, 318 F.3d 432, 436 (2d Cir. 2003) (citation omitted). The statute of limitations may be equitably tolled, for example, when a defendant fraudulently conceals from a plaintiff the fact that the plaintiff has a cause of action, or when the plaintiff is induced by the defendant to forego a lawsuit until the statute of limitations has expired. *See Pearl*, 296 F.3d at 82-83. In addition, for prisoners, the statute of limitations for a Section 1983 action "must be tolled while a prisoner

completes the mandatory exhaustion process" for prison grievances, set out in 42 U.S.C.

§ 1997e(a). *See Gonzalez v. Hasty*, 651 F.3d 318, 323-24 (2d Cir. 2011) (internal citation and

quotation marks omitted).

New York also provides by statute for other circumstances in which a limitations period

may be tolled. *See, e.g.,* N.Y. C.P.L.R. § 204(a) (where commencement of an action has been

stayed by court order), *id.* at § 204 (where a dispute has been submitted to arbitration but is

ultimately determined to be non-arbitrable), *id*. at § 207(3) (defendant is outside New York at the

time the claim accrues), *id.* at § 208 (plaintiff is disabled by infancy or insanity), *id*. at § 210

(death of plaintiff or defendant).

Because the failure to file an action within the limitations period is an affirmative

defense, a plaintiff is generally not required to plead that the case is timely filed. *See Abbas v.

Dixon*, 480 F.3d 636, 640 (2d Cir. 2007). Dismissal is appropriate, however, where the existence

of an affirmative defense, such as the statute of limitations, is plain from the face of the pleading.

*See Walters v. Indus. and Commercial Bank of China, Ltd.*, 651 F.3d 280, 293 (2d Cir. 2011)

("[D]istrict courts may dismiss an action *sua sponte* on limitations grounds in certain

circumstances where the facts supporting the statute of limitations defense are set forth in the

papers plaintiff himself submitted.") (internal quotation marks and citation omitted); *Pino v.

Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) (affirming *sua sponte* dismissal of complaint as frivolous on

statute of limitations grounds); *see also Abbas*, 480 F.3d at 640 (concluding that district court

should grant notice and opportunity to be heard before dismissing complaint *sua sponte* on

statute of limitations grounds).

If Plaintiff amends his complaint to address the deficiencies identified in this order, he must plead facts showing that equitable or statutory tolling applies, or he can limit his claims to those within the limitations period.

## C.   First Amendment Claims

Plaintiff makes several claims arising under the First Amendment. Plaintiff alleges that, in retaliation for exercising his First Amendment rights, he was denied law library access during certain hours. He also asserts claims regarding problems with mail receipts and law library access, which could be construed as claims for the denial of access to the courts. In addition, he brings First Amendment claims arising from delivery delays, or non-receipt of, newspapers and books. The Court considers these in turn.

### 1.   Retaliation for exercising First Amendment rights

To state a claim under Section 1983 for retaliation in violation of a prisoner's First Amendment rights, the prisoner must allege facts showing that "(1) the speech or conduct at issue was protected, (2) the defendant took adverse action against the plaintiff, and (3) there was a causal connection between the protected speech and the adverse action." *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (internal quotation marks and citation omitted).[5] The adverse action must be "conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights. . . . Otherwise, the retaliatory act is simply *de minimis* and therefore outside the ambit of constitutional protection." *Dawes v. Walker*, 239 F.3d

---

[5] The Second Circuit has reminded district courts that they "must approach prisoner claims of retaliation with skepticism and particular care because virtually any adverse action taken against a prisoner by a prison official – even those otherwise not rising to the level of a constitutional violation – can be characterized as a constitutionally proscribed retaliatory act." *Bacon v. Phelps*, 961 F.3d 533, 542-43 (2d Cir. 2020) (internal quotation marks and citation omitted).

489, 493 (2d Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002). "A plaintiff may establish causation [for the purpose of this type of claim] either directly through a showing of retaliatory animus, or indirectly through a showing that the protected activity was followed closely by the adverse action." *Smith v. Cnty. of Suffolk*, 776 F.3d 114, 118 (2d Cir. 2015).

Plaintiff alleges that he was retaliated against for submitting "numerous grievances." (ECF 2 at 4.) Filing a grievance constitutes protected First Amendment activity. *Dolan v. Connolly*, 794 F.3d 290 (2d Cir. 2015); *Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996). Plaintiff's allegations that he was denied law library access "during the times specified in the Prison Manual" (ECF 2 at 4) and was instead allowed to use the law library during the early evening hours, are insufficient to show that he was subjected to the type of "conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *Dawes*, 239 F.3d at 493. Plaintiff makes no allegation, for example, that the timing of his law library access had any consequences for his legal matters. Plaintiff's allegations thus do not show that he was subjected to an adverse action. Nor does Plaintiff plead facts suggesting a causal connection between his filing of grievances and the timing of his visits to the law library. In addition, as with Plaintiff's other claims, he has not identified for this claim any particular defendant who was personally involved in retaliating against him. Plaintiff thus fails to state a claim that he suffered retaliation in violation of his First Amendment rights.

2.   Access to courts

"[P]rison law libraries and legal assistance programs are not [constitutionally mandated] ends in themselves, but only the means for ensuring a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Lewis v. Casey*, 518 U.S. 343, 351 (1996) (internal quotation marks omitted). Because of this, "an inmate cannot establish

relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." *Id*. Instead, a claim for deprivation of access to the courts requires two allegations: (1) that the plaintiff has a valid underlying cause of action separate from the right-of-access claim; and (2) that the plaintiff has suffered frustration or hindrance of the litigation that has been caused by the defendant's actions. *See Christopher v. Harbury*, 536 U.S. 403, 415 (2002); *Mahon v. Moultrie*, 657 F. App'x 52, 53 (2d Cir. 2016) ("To state a claim of denial of court access, a plaintiff must allege that the defendant took or was responsible for actions that hindered a plaintiff's efforts to pursue a legal claim and that the defendant's actions resulted in actual injury to the plaintiff.")

Courts have identified four elements to plead a "backward-looking" access to courts claim:

> First, the plaintiff must identify a nonfrivolous, arguable underlying claim. Second, the plaintiff must establish that the defendant took or was responsible for actions that hindered a plaintiff's efforts to pursue a legal claim. Third, the plaintiff must show that the defendant's alleged conduct was deliberate and malicious. Fourth, the plaintiff must demonstrate that the defendant's actions resulted in an actual injury to the plaintiff.

*Jean-Laurent v. Lawrence*, No. 12-CV-1502 (JPO), 2015 WL 1208318, at *4 (S.D.N.Y. Mar. 17, 2015).

Plaintiff's allegations that he was able to use the law library only at times other than those specified in the Prison Manual fail to state a claim for denial of access to courts. He does not allege that he had a nonfrivolous legal claim that was frustrated or impeded due to the timing of his law library visits. Mere "delay in being able to work on one's legal action or communicate with the courts does not rise to the level of a constitutional violation." *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) (citation omitted); *Benjamin v. Fraser*, 264 F.3d 175, 186 (2d Cir. 2001)

(prison law libraries are merely "one constitutionally acceptable method to assure meaningful access to the courts").

Plaintiff also does not state an access-to-courts claim based on his allegations that he did not receive a receipt for his mailing to the Appellate Division. Plaintiff does not describe either the nature of his mailing to the court or the underlying litigation. *See Christopher v. Harbury*, 536 U.S. 403, 415 (2002) ("[T]he underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint."). Nor does he show how defendant's actions in failing to provide a copy of the receipt frustrated or hindered his nonfrivolous legal claim.

Plaintiff's allegations regarding the timing of his law library visits and the failure to provide a receipt of mailing thus fail to state a claim that Plaintiff was denied his First Amendment right to access the courts. If Plaintiff chooses to amend his complaint and replead these claims, he must include facts showing how the law library or mail issues hindered his nonfrivolous legal claim(s).

3.    Access to incoming newspapers

That inmates have a First Amendment right to access publications insofar as consistent with prison security is clearly established. *See Abdul Wali v. Coughlin*, 754 F.2d 1015, 1030 (2d Cir. 1985) (First Amendment right to "receive information" entitled to special solicitude). Here, Plaintiff does not allege that the failure to promptly deliver his copies of *The New York Times* or *Barron's Weekly* was the result of a prison regulation, or was a content-based restriction denying him access to specific literature. Rather, Plaintiff's allegation that delivery of his subscriptions was delayed appears to be a claim for interference with his incoming mail.

"A prisoner's right to the free flow of incoming and outgoing mail is protected by the First Amendment." *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003). Courts afford "greater protection to legal mail than to non-legal mail, as well as greater protection to outgoing mail than

to incoming mail." *Id.* at 351. To state a claim for a violation of such a right, a "prisoner must show that the interference with his mail was both regular and unjustified." *Antrobus v. City of New York*, 2014 WL 1285648, at \*4 (S.D.N.Y. Mar. 27, 2014); *Davis*, 320 F.3d at 351.

For interference with mail to be "regular," it must be fairly substantial. *See, e.g., Ahlers v. Rabinowitz*, 684 F.3d 53, 65 (2d Cir. 2012) (holding that "eleven instances over four months does not in itself support an inference of regular interference," where mail was returned to plaintiff within two to six weeks); *Cancel v. Goord,* No. 00-CV-2042, 2002 WL 171698, at \*3 (S.D.N.Y. Feb. 4, 2002) (holding an allegation of seven delays, ranging from two to six weeks, over the course of a year was insufficient); *Allevato v. Mallozzi*, No. 22-CV-0076, 2022 WL 1288443, at \*2 (N.D.N.Y. Apr. 29, 2022) (allegations "that this official delayed returning mail to plaintiff by a few days" are insufficient to state a cognizable Section 1983 claim). Moreover, "relatively short term delays, absent any further allegations indicating that the mail was stolen or tampered with, do not alone create a cause of action" and "mistakes [do not] amount to a constitutional violation absent any other allegations of deliberateness." *Cancel*, 2002 WL 171698, at \*3-4.

Here, Plaintiff alleges that copies of *The New York Times* were regularly delivered one to two weeks after the publication date and that the prison did not make deliveries on Saturday or Sunday. He rarely received the Sunday edition and sometimes received "batches of 3-5 daily editions." (ECF 2 at 3.) These allegations regarding brief delays in receiving non-legal mail are insufficient to establish regular interference with his mail.

Plaintiff also does not allege facts showing that the delays were unjustified. He indicates that Correction Officer Sullivan told him that Correction Officers picked up the mail during their lunch time or at the beginning or end of a shift (ECF 2 at 3), which is why deliveries were somewhat irregular. These allegations regarding employee workflow do not show that mail

delivery delays were unjustified. He also does not plead facts suggesting that the delays were deliberate. Plaintiff's allegations are thus insufficient to state a Section 1983 claim for regular and deliberate interference with Plaintiff's First Amendment right to the free flow of incoming mail.

If Plaintiff repleads this claim in an amended complaint, he must plead facts showing regular and unjustified interference with his mail, identify which defendants were personally involved in violating his rights, and plead any facts showing why the claim is not time-barred, at least as to delays arising prior to June 2019.

4.     Limit on books in cell

Plaintiff alleges that rules of the Westchester County Jail permitted prisoners to have five books in their cells. "[A] regulation impinging on an inmate's constitutional rights must be upheld 'if it is reasonably related to legitimate penological interests.'" *Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington*, 566 U.S. 318, 326 (2012) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)); *see also Thornburgh v. Abbott*, 490 U.S. 401, 414 (1989) (holding, in the context of prison policy governing incoming mail, that "we must determine whether the governmental objective underlying the regulations at issue is legitimate and neutral, and that the regulations are rationally related to that objective").[6]

Here, Plaintiff does not challenge the five-book rule itself; instead, he suggests that (1) it was applied unevenly, as another prisoner was permitted to flout this rule by keeping "dozens of

---

[6] "[T]he Second Circuit regularly applies the *Turner* test to challenges to the conditions under which pretrial detainees are held." *United States v. Loera*, No. 09-CR-466S4 (BMC), 2017 WL 9481022, at *4 (E.D.N.Y. Sept. 27, 2017), *report and recommendation adopted in part*, 2017 WL 4675773 (E.D.N.Y. Oct. 17, 2017); *United States v. El-Hage*, 213 F.3d 74, 81 (2d Cir. 2000) (applying *Turner* to pretrial detainee's challenge to conditions of confinement).

paperback books" (ECF 2 at 4); and (2) unspecified defendants "knew" that Plaintiff had

returned six books to his home "but apparently failed to keep a record of the return."[7] (*Id.* at 4.)

Plaintiff's allegations that there was a dispute about counting the number of books in his cell,

without more, do not state a claim that any defendant violated Plaintiff's constitutional rights.

Allegations that unidentified defendant(s) treated differently a single individual, who may or may

not have been similarly situated to Plaintiff, also do not suffice to state a claim under the First

Amendment. Finally, as with Plaintiff's other claims, he has not identified which defendant(s)

were personally involved in the incident.

**D.     Deliberate Indifference**

1.     Cold temperatures

Plaintiff alleges that during his incarceration, for one week in May 2019, the inside

temperature was too cold. "The Constitution 'does not mandate comfortable prisons' . . . but

neither does it permit inhumane ones." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting

*Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)). Ultimately, the question is whether the

conditions of the prisoner's confinement violate contemporary standards of decency. *Phelps v.*

*Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2002) (citing *Rhodes*, 452 U.S. at 347).

A claim regarding conditions of confinement arises under the Due Process Clause of the

Fourteenth Amendment, if Plaintiff was a pretrial detainee at the time of the event, and under the

Eighth Amendment, if he was a convicted prisoner. *Bell v. Wolfish*, 441 U.S. 520, 536 n.16

(1979); *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). Plaintiff's judgment of conviction was

entered in March 2019, *Corines*, 204 A.D.3d at 827, and it therefore appears that he was a

---

[7] The response to Plaintiff's grievance seems to indicate that he had not completed specific paperwork that would have corrected the list of books in his cell but, at this stage, the Court accepts as true Plaintiff's allegations.

convicted prisoner in May 2019, when this claim arose. To state a deliberate indifference claim under the Cruel and Unusual Punishments Clause of the Eighth Amendment, a prisoner must satisfy two elements: (1) an "objective" element, showing that the challenged conditions of confinement are sufficiently serious, and (2) a "mental" element, showing that a prison official has acted with at least deliberate indifference to those conditions of confinement. *Darnell*, 849 F.3d at 29, 33 n.9

Courts have found that prisoners who were exposed to extremely cold temperatures for extended periods faced an objectively serious harm. *See, e.g.*, *Gaston v. Coughlin*, 249 F.3d 156, 161, 164–65 (2d Cir. 2001) (holding that convicted prisoner stated Eighth Amendment claim by alleging that his cell block windows were not repaired, exposing him to freezing temperatures for the entire winter); *Wright v. McMann*, 387 F.2d 519, 526 (2d Cir. 1967) (holding that convicted prisoner stated Eighth Amendment claim by alleging that he was exposed to "bitter cold" wearing only underwear for twenty-one days); *Corselli v. Coughlin*, 842 F.2d 23, 27 (2d Cir. 1988) (holding that convicted prisoner stated Eighth Amendment claim by alleging that he was given two blankets and subjected to freezing temperatures for three months)

By contrast, in cases where prisoners were subjected to mildly cold temperatures, or where the exposure to cold was short-term, courts generally have not found that they faced a risk of serious harm. *See, e.g., Borges v. McGinnis*, No. 03-CV-6375, 2007 WL 1232227, at *2, *6 (W.D.N.Y. Apr. 26, 2007) (dismissing complaint that alleged convicted prisoner was subjected to fifty-degree temperature for three days); *Smith v. Burge*, No. 03-CV-0955, 2006 WL 2805242, at *7 (N.D.N.Y. Sept. 28, 2006) (dismissing complaint that alleged convicted prisoner was left in T-shirt and underwear in "very cold" cell for less than one day); *Davis v. Buffardi*, No. 01-CV-0285, 2005 WL 1174088, at *2 (N.D.N.Y. May 4, 2005) (dismissing complaint for failure to

allege that convicted prisoner suffered substantial harm despite allegations that he was denied

extra blankets and clothing during ten-day period when boiler broke). Accordingly, Plaintiff's

allegations that in spring 2019, the air conditioning was excessive during one week are

insufficient to show that he was at risk of serious harm.

Plaintiff also does not plead any facts about which defendants could be deemed

subjectively deliberately indifferent, in that they were both (1) aware of a substantial risk of

serious harm to him from the cold temperatures, and (2) after having drawn the conclusion that

he faced serious harm, disregarded that risk. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (a

convicted prisoner must allege that the official was both "aware of facts from which the

inference could be drawn that a substantial risk of serious harm exists, and he must also [have]

draw[n] the inference").

Plaintiff thus fails to state a claim for deliberate indifference based on excessive air

conditioning in his cell or housing unit in May 2019. If Plaintiff chooses to replead this claim in

an amended complaint, he must include allegations regarding (1) why this claim, arising in May

2019, was not time-barred when he filed this action in June 2022; (2) which defendant(s) were

personally involved in violating his rights; and (3) facts showing that he faced a serious risk and

that one or more defendant(s) knew of the serious risk and disregarded it.

2.      Grievance regarding prisoner threats

Plaintiff asserts that he never received a response to the grievance that he gave to

Sergeant Rhodes, in which he alleged that other prisoners had threatened him. (ECF 2 at 5.)

Insofar as Plaintiff intends to assert a claim for the lack of response to a grievance, the

allegations fail to state a claim on which relief can be granted. "A prisoner has no constitutional

right to a prison grievance procedure or to have his grievances investigated." *Hayes v. Cnty. of

Sullivan*, 853 F. Supp. 2d 400, 434 (S.D.N.Y. 2012) (collecting cases).

Plaintiff's allegations are also insufficient to state a Section 1983 claim for any

defendant's failure to protect him from a substantial risk of serious harm from other prisoners.

Plaintiff does not plead any facts about what threats he faced from other prisoners, other than that

he filed a grievance. He also does not plead facts showing that any defendant was aware of the

serious risk of harm that Plaintiff faced and thereafter was deliberately indifferent to it.[8] *See*

*Darnell*, 849 F.3d at 29, 33 n.9 (deliberate indifference claim requires allegations that defendant

was subjectively aware of risk of serious harm to the plaintiff). On the contrary, the attachments

to the complaint suggest that defendants took action, moving him to prevent any future harm.

Plaintiff thus has not stated a Section 1983 claim against any defendant for failure to protect him.

## LEAVE TO AMEND

Plaintiff proceeds in this matter without the benefit of an attorney. District courts

generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its

defects, unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir.

2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Indeed, the Second Circuit has

cautioned that district courts "should not dismiss [a *pro se* complaint] without granting leave to

amend at least once when a liberal reading of the complaint gives any indication that a valid

claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v.*

*USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)). Because Plaintiff may be able to allege

additional facts to state a valid claim under Section 1983, the Court grants Plaintiff 60 days'

leave to amend his complaint to detail his claims. In particular, in addition to pleading facts that

---

[8] A statement attached to the complaint states that Plaintiff was moved to a different
housing unit after he raised a concern about a risk of harm. (ECF 2 at 49.)

satisfy the substantive standards, Plaintiff must also plead facts about the personal involvement of defendant(s) and any basis for tolling the limitations period.

Plaintiff is granted leave to amend his complaint to provide more facts about his claims. First, Plaintiff must name as the defendant(s) in the caption and in the statement of claim those individuals who were allegedly involved in the deprivation of his federal rights. If Plaintiff does not know the name of a defendant, he may refer to that individual as "John Doe" or "Jane Doe" in both the caption and the body of the amended complaint.[9]  The naming of John Doe defendants, however, does *not* toll the three-year statute of limitations period governing this action and Plaintiff shall be responsible for ascertaining the true identity of any "John Doe" defendants and amending his complaint to include the identity of any "John Doe" defendants before the statute of limitations period expires.[10]

In the "Statement of Claim" section of the amended complaint form, Plaintiff must provide a short and plain statement of the relevant facts supporting each claim against each defendant. If Plaintiff has an address for any named defendant, Plaintiff must provide it. Plaintiff should include all of the information in the amended complaint that Plaintiff wants the Court to consider in deciding whether the amended complaint states a claim for relief. That information should include:

   a)  the names and titles of all relevant people;

   b)  a description of all relevant events, including what each defendant did or failed to do, the approximate date and time of each event, and the general location where each event occurred;

---

[9] For example, a defendant may be identified as: "Correction Officer John Doe #1 on duty August 31, 2022, at Sullivan Correctional Facility, during the 7-3 p.m. shift."

[10] Should Plaintiff seek to add a new claim or party after the statute of limitations period has expired, he must meet the requirements of Rule 15(c) of the Federal Rules of Civil Procedure.

    c)  a description of the injuries Plaintiff suffered; and

    d)  the relief Plaintiff seeks, such as money damages, injunctive relief, or declaratory relief.

Essentially, Plaintiff's amended complaint should tell the Court: who violated his federally protected rights and how; when and where such violations occurred; and why Plaintiff is entitled to relief. Plaintiff must include this information for each claim he asserts.

Because Plaintiff's amended complaint will completely replace, not supplement, the original complaint, any facts or claims that Plaintiff wants to include from the original complaint must be repeated in the amended complaint.

## CONCLUSION

Plaintiff is granted leave to file an amended complaint that complies with the standards set forth above. Plaintiff must submit the amended complaint to this Court's Pro Se Intake Unit within sixty days of the date of this order, caption the document as an "Amended Complaint," and label the document with docket number 22-CV-5179 (LTS). An Amended Civil Rights Complaint form is attached to this order. No summons will issue at this time. If Plaintiff fails to comply within the time allowed, and he cannot show good cause to excuse such failure, the complaint will be dismissed for failure to state a claim upon which relief may be granted.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an

appeal. *Cf. Coppedge v. United States*, 369 U.S. 438, 444-45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue).

Dated:    September 19, 2022
          New York, New York

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

_____

Write the full name of each plaintiff.


-against-

_____

_____

_____

_____

Write the full name of each defendant. If you cannot fit the names of all of the defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed above must be identical to those contained in Section IV.

_____CV_____
(Include case number if one has been assigned)

**AMENDED COMPLAINT**
(Prisoner)

Do you want a jury trial?
☐ Yes   ☐ No

---

**NOTICE**

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

## I.    LEGAL BASIS FOR CLAIM

State below the federal legal basis for your claim, if known. This form is designed primarily for prisoners challenging the constitutionality of their conditions of confinement; those claims are often brought under 42 U.S.C. § 1983 (against state, county, or municipal defendants) or in a "*Bivens*" action (against federal defendants).

☐  Violation of my federal constitutional rights

☐  Other: _____

## II.    PLAINTIFF INFORMATION

Each plaintiff must provide the following information. Attach additional pages if necessary.

_____

First Name                    Middle Initial              Last Name

_____

State any other names (or different forms of your name) you have ever used, including any name you have used in previously filing a lawsuit.

_____

Prisoner ID # (if you have previously been in another agency's custody, please specify each agency and the ID number (such as your DIN or NYSID) under which you were held)

_____

Current Place of Detention

_____

Institutional Address

_____

County, City                              State                      Zip Code

## III.    PRISONER STATUS

Indicate below whether you are a prisoner or other confined person:

☐  Pretrial detainee
☐  Civilly committed detainee
☐  Immigration detainee
☐  Convicted and sentenced prisoner
☐  Other: _____

## IV.   DEFENDANT INFORMATION

To the best of your ability, provide the following information for each defendant. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are identical to those listed in the caption. Attach additional pages as necessary.

Defendant 1:

| First Name | Last Name | Shield # |
|---|---|---|

Current Job Title (or other identifying information)

Current Work Address

| County, City | State | Zip Code |
|---|---|---|

Defendant 2:

| First Name | Last Name | Shield # |
|---|---|---|

Current Job Title (or other identifying information)

Current Work Address

| County, City | State | Zip Code |
|---|---|---|

Defendant 3:

| First Name | Last Name | Shield # |
|---|---|---|

Current Job Title (or other identifying information)

Current Work Address

| County, City | State | Zip Code |
|---|---|---|

Defendant 4:

| First Name | Last Name | Shield # |
|---|---|---|

Current Job Title (or other identifying information)

Current Work Address

| County, City | State | Zip Code |
|---|---|---|

## V.     STATEMENT OF CLAIM

Place(s) of occurrence: _____

Date(s) of occurrence: _____

**FACTS:**

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and how each defendant was personally involved in the alleged wrongful actions. Attach additional pages as necessary.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

_____

_____

_____

_____

_____

## VI.    RELIEF

State briefly what money damages or other relief you want the court to order.

_____

_____

_____

_____

_____

_____

_____

## VII.   PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I understand that if I file three or more cases while I am a prisoner that are dismissed as frivolous, malicious, or for failure to state a claim, I may be denied *in forma pauperis* status in future cases.

I also understand that prisoners must exhaust administrative procedures before filing an action in federal court about prison conditions, 42 U.S.C. § 1997e(a), and that my case may be dismissed if I have not exhausted administrative remedies as required.

I agree to provide the Clerk's Office with any changes to my address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| | |
|---|---|
| Dated | Plaintiff's Signature |

| | | |
|---|---|---|
| First Name | Middle Initial | Last Name |

Prison Address

| | | |
|---|---|---|
| County, City | State | Zip Code |

Date on which I am delivering this complaint to prison authorities for mailing: _____