UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

PETER J. CORINES,

                              Plaintiff,

        v.

THE COUNTY OF WESTCHESTER, NEW
YORK, et al.,

                              Defendants.

No. 22-CV-5179 (KMK)

<u>OPINION & ORDER</u>

---

<u>Appearances</u>:

Peter J. Corines
Eastchester, NY
*Pro se Plaintiff*

Loren Zeitler, Esq.
Westchester County Department of Law
White Plains, NY
*Counsel for Defendants*

Phoenix Marino, Esq.
Sidley Austin LLP
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

        Peter Corines ("Plaintiff"), proceeding pro se, brings this Action pursuant to 42 U.S.C.

§ 1983 against Westchester County (the "County"), Assistant Wardens Carl Vollmer

("Vollmer") and Francis Delgrosso ("Delgrosso"), Sergeants Hurley, Reyes-Rhodes, Lopez, and

Ashterman,[1] and two John Doe mailroom officers (collectively "Defendants") for violations of

---

[1] Plaintiff names Sergeant Ashterman in the caption but refers to a "Sgt. Ashterton" in his
Amended Complaint.  (*See generally* Am. Compl.)  Defendants concur with "Ashterman," so the
Court uses that name.

his constitutional rights while he was incarcerated at Westchester County Jail.  (*See generally* Am. Compl. (Dkt. No. 9).)  Before the Court is Defendants' Motion to Dismiss.  (Not. of Mot. (Dkt. No. 31).)  For the reasons set forth below, the Motion is granted.

## I.  Background

### A.  Factual Background

The following facts come from the Amended Complaint and are assumed true for the purposes of this Motion.

Plaintiff was incarcerated at Westchester County Jail from December 12, 2018, until August 7, 2019.  (Am. Compl. 2.)[2]  During that time, Plaintiff's family paid for subscriptions to the New York Times, Wall Street Journal, and Barron's, in addition to mailing him several books.  (*Id*. 3–4.)  But Plaintiff had difficulties receiving that material.  In many cases, daily editions of publications were delivered weeks after receipt by the jail or not at all, and he rarely received weekend editions.  (*Id*. at 3–5.)[3]  These delivery issues were continual, beginning shortly after Plaintiff's incarceration in January 2019, and lasting until his discharge.  (*Id*. at 5.) Plaintiff filed grievances regarding these issues on June 6, and July 3, 2019, which he contends did not resolve his problems.  (*Id*. at 6.)  He also notified Delgrosso and Vollmer, two supervisory officials, who took no action to address complaints.  (*Id*.)

Beyond subscriptions, the Jail also failed to deliver a piece of priority mail that it received on July 18, 2019; an issue that Plaintiff also grieved but that the Jail did not investigate. (*Id*. at 7.)

---

[2] For the sake of clarity, the Court's citations refer to page numbers in the Amended Complaint, not paragraph numbers.

[3] Plaintiff alleges that Saturday and Sunday editions were "confiscated, destroyed or diverted for personal use by employees."  (Am. Compl. 4.)

In addition to subscription troubles, Plaintiff did not receive books mailed to him by his family. (*Id*. at 7–8.) As told to Plaintiff by Defendant Hurley, the Jail limited the number of books in each inmate's cell to five. (*Id*. at 8.) Although officials knew that Plaintiff had fewer than five books, they would claim that he had more than five, leading the mail room to return at least six books to his home. (*Id*. at 13–14.) At least one other inmate, however, had over one hundred books in his cell apparently without sanction. (*Id*. at 8.) Hurley, who visited Plaintiff's cell and could see how many books he had, did not investigate or resolve the issue. (*Id*. at 14.)

Plaintiff's allegations extend to outgoing mail, too. In one instance, Plaintiff attempted to mail a legal document—an "application for bail and motion to dismiss indictment"—to New York State Court, but he did not receive a receipt. (*Id*. at 9.) The package never made it to the court, and his application was only docketed after his wife resubmitted it. (*Id*.) This resulted in delay and ultimately a decision after he was released. (*Id*. at 15.) Other mail was delivered, however, but the return receipt was sent to Plaintiff's home address. (*Id*. at 9.) Plaintiff gave grievances to Lopez and Reyes-Rhodes, who did not investigate or provide a useful response. (*Id*. at 9–10.)

As to the mail issues generally, Plaintiff alleges that Delgrosso and Vollmer permitted employees they supervised to interfere with his mail, including two John Doe mailroom officers. (*Id*. at 13.)

Apart from mail, Plaintiff requested but was denied access to the law library on multiple occasions despite meeting its access requirements. (*Id*. at 14–15.) This included times the library was open and vacant. Plaintiff submitted numerous grievances, but Ashterman and Delgrosso did not investigate or resolve his access issues. (*Id*. at 15.)

Plaintiff seeks damages in addition to various forms of declaratory and injunctive relief. (*Id*. at 15–16.)[4]

B.  Procedural History

Plaintiff commenced this Action on June 17, 2022.  (*See* Compl. (Dkt. No. 1).)  After granting Plaintiff's application to proceed in forma pauperis, (Dkt. No. 5), the Court conducted a sua sponte review of his Complaint.  *See* 28 U.S.C. § 1915(e)(2)(B).  In an Order dated September 19, 2022, the Court identified various pleading deficiencies and granted Plaintiff 60 days leave to amend.  *See Corines v. Westchester Cnty. Dep't of Corr.*, No. 22-CV-5179, 2022 WL 4341999 (S.D.N.Y. Sept. 19, 2022).  After an extension, (Dkt. No. 8), Plaintiff filed his Amended Complaint on December 14, 2022.

On July 20, 2023, Defendants filed the instant Motion.  (*See* Not. of Mot. (Dkt. No. 31); Mem. of Law in Supp. of Mot. ("Defs' Mem.") (Dkt. No. 33); Decl. of Loren Zeitler in Supp. of Mot. ("Zeitler Decl.") (Dkt. No. 32).)  After the Court extended Plaintiff's response deadline, (Dkt. No. 35), Plaintiff filed his Opposition on September 25, 2023.  (Pl's Answer in Opp. to Mot. ("Pl's Opp.") (Dkt. No. 36).)  Defendants replied on October 16, 2023.  (Reply Mem. of Law ("Defs' Reply") (Dkt. No. 37).)

II.  Discussion

A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of

---

[4] Plaintiff alleges that he has been discharged from the Westchester County Jail, (*see, e.g.*, Am. Compl. 2 n.1 (stating Plaintiff was "discharged from the Jail on August 7, 2019")), and he does not contest that his release moots his claims for declaratory and injunctive relief, *see Booker v. Graham*, 974 F.3d 101, 107 (2d Cir. 2020) ("[A]n inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility" (quoting *Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006))).

[its] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id*. (alteration and quotation marks omitted). Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id*. at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id*. at 570, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id*.; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id*. at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and "draw[ ] all reasonable inferences in favor of the plaintiff," *Daniel v. T & M*

5

*Protection Resources, Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).  Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken."  *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (citation and quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).  However, when the complaint is filed by a pro se plaintiff, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (quotation marks omitted), including "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted), and "documents either in [the plaintiff's] possession or of which [the] plaintiff[ ] had knowledge and relied on in bringing suit," *Chambers*, 282 F.3d at 153 (quotation marks omitted).

Where, as here, a plaintiff proceeds pro se, the court must "construe[] [the plaintiff's] [complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (citation omitted).  However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law."  *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (citation and quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and citation omitted)).

B.  Analysis

Defendants raise three points in their Motion.  They argue that (1) Plaintiff's claims are

barred by the statute of limitations, (Defs' Mem. 4); (2) that Plaintiff fails to state a claim against

the County, (*id*. at 5–12); and (3) that Plaintiff has not alleged personal involvement as to any of

the individual Defendants, (*id*. at 12–15).  The Court considers each issue in turn.

1.  Timeliness

As explained in the Court's prior order, New York's general three-year statute of

limitations governs in § 1983 cases.  *Corines*, 2022 WL 4341999, at *3 (citing *Pearl v. City of

Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002)); *see also* N.Y. C.P.L.R. § 214(5).  And that period

begins when a plaintiff "knows or has reason to know of the injury that is the basis of the claim."

*Id*. (citing *Hogan v. Fischer*, 738 F.3d 509, 518 (2d Cir. 2013)); *see also Cotto v. City of New

York*, No. 15-CV-9123, 2017 WL 3476045, at *3 (S.D.N.Y. Aug. 11, 2017) (holding the

plaintiffs' claims accrued on the date that the plaintiffs "allege their various federal constitutional

violations . . . occurred").  Claims arising more than three years before the Complaint was filed

are therefore time-barred, "unless equitable tolling applies."  *See Marquez v. Comm'r of Soc.

Sec.*, No. 18-CV-12232, 2019 WL 13399128, at *5 (S.D.N.Y. Oct. 7, 2019).

"Equitable tolling allows courts to extend the statute of limitations beyond the time of

expiration as necessary to avoid inequitable circumstances."  *Johnson v. Nyack Hosp*., 86 F.3d 8,

12 (2d Cir. 1996).  Thus, "[a]s a general matter, a litigant seeking equitable tolling must establish

two elements: '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary

circumstance stood in his way and prevented timely filing.'"  *Bolarinwa v. Williams*, 593 F.3d

226, 231 (2d Cir. 2010) (quoting *Lawrence v. Florida*, 549 U.S. 327, 336 (2007)).  "[E]quitable

tolling requires a party to pass with reasonable diligence through the period it seeks to have

tolled."  *Iavorski v. U.S. I.N.S.*, 232 F.3d 124, 134 (2d Cir. 2000) (internal quotation marks

omitted).  If, for instance, "the defendant fraudulently conceals the wrong, the time does not begin running until the plaintiff discovers, or by the exercise of reasonable diligence should have discovered, the cause of action." *Keating*, 706 F.2d at 382.  Importantly, "the applicable statute of limitations must be tolled while a prisoner completes the mandatory exhaustion process," which includes the filing and appeal of grievances. *Harris v. Viau*, No. 17-CV-9746, 2019 WL 1978596, at *7 (S.D.N.Y. May 3, 2019) (quoting *Gonzalez v. Hasty*, 651 F.3d 318, 323–24 (2d Cir. 2011)); *see also Marshall v. Annucci*, No. 16-CV-8622, 2018 WL 1449522, at *4 (S.D.N.Y. Mar. 22, 2018) (same).  Additionally, the "lapse of a limitations period is an affirmative defense that a defendant must plead and prove.  Nevertheless, a defendant may raise an affirmative defense in a pre-answer Rule 12(b)(6) motion," but only "if the defense appears on the face of the complaint." *Whiteside v. Hover-Davis, Inc*., 995 F.3d 315, 319 (2d Cir. 2021) (alteration, quotation marks, and citations omitted); *accord Doe v. State Univ. of N.Y. Purchase Coll.*, 617 F. Supp. 3d 195, 204 (S.D.N.Y. 2022).

Plaintiff commenced this Action on June 17, 2022, (*see* Compl.), but makes allegations about events that occurred over three years prior.  Indeed, his allegations largely concern series of events that commenced at or soon after his incarceration in December 2018 and continued through his August 17, 2019, discharge.  (*See* Am. Compl. 4–5 (alleging mail disruption beginning January 2019); *id*. at 7–8 (describing book access issues beginning in February 2019); *id*. at 14 (alleging law library access problems throughout period of incarceration).)  And his claims about legal mail concern a package he sent on June 1, 2019.  (*Id*. at 9.)  It would thus appear, as Defendants suggest, (*see* Defs' Mem. 4), that these claims are time barred in whole or in part, unless equitable tolling applies.

In opposition, Plaintiff states that he filed grievances about all of these issues, as required to exhaust his claims. (*See* Pl's Opp. 6–7.) Although the grievance process tolls the statute of limitations, *see Harris*, 2019 WL 1978596, at *7, Plaintiff does not provide much information about how long the process took for each filing. (*See generally* Pl's Opp.) Also unclear is whether any events giving rise to Plaintiff's claims occurred after June 17, 2019. Defendants, for their part, fail to respond to Plaintiff's tolling argument in the course of their cursory briefing on the issue. (*See* Defs' Reply 1–2.) What is left is a situation where some of Plaintiff's allegations may be time-barred, but where it is impossible to tell which ones based on the pleadings. In that circumstance, any doubt defeats a motion to dismiss. As noted, the statute of limitations is an "affirmative defense" for which Defendants "bear the burden of proof," *Parisienne v. Scripps Media, Inc*., No. 19-CV-8612, 2021 WL 3668084, at *2 (S.D.N.Y. Aug. 17, 2021) (alteration adopted) (quotation marks omitted); *see also United States v. Livecchi*, 711 F.3d 345, 352 (2d Cir. 2013) (same), and they have not carried it here.

### 2. *Monell*

Plaintiff names Westchester County as a Defendant and alleges that it, through the Department of Corrections, played a role in his various claims. Defendants appropriately construe the Amended Complaint to state a *Monell* claim, which imposes liability on a municipality if that government entity's acts or policies violated Plaintiff's constitutional rights. *See Monell v. Dep't of Soc. Servs*., 436 U.S. 658, 694 (1978). They argue, however, that Plaintiff failed to allege a government policy or custom and that his underlying constitutional claims lack merit. (Defs' Mem. 5–12.) As explained below, Plaintiff fails to allege that policies or customs caused most of his claims. And the one policy he does challenge—the five-book limit—did not violate his constitutional rights.

a.  Applicable Law

"A § 1983 plaintiff must establish that a person acting under the color of state law deprived him of a right guaranteed by the Constitution or the laws of the United States." *Vincent v. Annucci*, 63 F.4th 145, 151 (2d Cir. 2023). Although "municipalities and other local government units" are "persons" that may be sued under § 1983, "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell*, 436 U.S. at 690–91.  "Thus, '[t]he elements of a *Monell* claim are (1) a municipal policy or custom that (2) causes the plaintiff to be subjected to (3) the deprivation of a constitutional right.'" *Friend v. Gasparino*, 61 F.4th 77, 93 (2d Cir. 2023) (alteration in original) (quoting *Agosto v. N.Y.C. Dep't of Educ.*, 982 F.3d 86, 97 (2d Cir. 2020)).

The "policy or custom" element reflects the notion that "a municipality may not be held liable under § 1983 solely because it employs a tortfeasor," *Board of County Commissioners v. Brown*, 520 U.S. 397, 403 (1997), or "by application of the doctrine of respondeat superior," *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986); *see also Vassallo v. Lando*, 591 F. Supp. 2d 172, 201 (E.D.N.Y. 2008) (noting that "a municipal entity may only be held liable where the entity *itself* commits a wrong"). Instead, there must be a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *see also City of St. Louis v. Praprotnik*, 485 U.S. 112, 122 (1988) ("[G]overnments should be held responsible when, and only when, their official policies cause their employees to violate another person's constitutional rights.").

"In determining municipal liability, it is necessary to conduct a separate inquiry into whether there exists a 'policy' or 'custom.'" *Davis v. City of New York*, 228 F. Supp. 2d 327, 336 (S.D.N.Y. 2002), *aff'd*, 75 F. App'x 827 (2d Cir. 2003) (summary order). Normally, "a policy or custom cannot be inferred from . . . a single incident of illegality." *Lucente v. County*

10

*of Suffolk*, 980 F.3d 284, 306 (2d Cir. 2020) (quoting *Turpin v. Mailet*, 619 F.2d 196, 201 (2d

Cir. 1980)); *see also City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985) (plurality

opinion) ("Proof of a single incident of unconstitutional activity is not sufficient to impose

liability under *Monell*, unless proof of the incident includes proof that it was caused by an

existing, unconstitutional municipal policy, which policy can be attributed to a municipal

policymaker."); *Brogdon v. City of New Rochelle*, 200 F. Supp. 2d 411, 427 (S.D.N.Y. 2002) ("A

single incident by itself is generally insufficient to establish the affirmative link between the

municipal policy or custom and the alleged unconstitutional violation.").

 A plaintiff may satisfy the "policy or custom" requirement by alleging one of the

following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by
> government officials responsible for establishing the municipal policies that caused
> the particular deprivation in question; (3) a practice so consistent and widespread
> that, although not expressly authorized, constitutes a custom or usage of which a
> supervising policy-maker must have been aware; or (4) a failure by policymakers
> to provide adequate training or supervision to subordinates to such an extent that it
> amounts to deliberate indifference to the rights of those who come into contact with
> the municipal employees.

*Buari v. City of New York*, 530 F. Supp. 3d 356, 398 (S.D.N.Y. 2021) (citation omitted).

Moreover, a plaintiff must also establish a causal link between the municipality's policy, custom,

or practice and the alleged constitutional injury. *See Tuttle*, 471 U.S. at 824 n.8 ("The fact that a

municipal 'policy' might lead to 'police misconduct' is hardly sufficient to satisfy *Monell*'s

requirement that the particular policy be the 'moving force' behind a constitutional violation.

There must at least be an affirmative link between[, for example,] the training inadequacies

alleged, and the particular constitutional violation at issue." (emphasis omitted)); *Lucente*, 980

F.3d at 297 (noting that "the plaintiff must 'demonstrate that, through its deliberate conduct, the

municipality was the moving force behind the alleged injury[.]'" (quoting *Roe v. City of*

*Waterbury*, 542 F.3d 31, 37 (2d Cir. 2008))); *Johnson v. City of New York*, No. 06-CV-9426, 2011 WL 666161, at *3 (S.D.N.Y. Feb. 15, 2011) (noting that after demonstrating the existence of a municipal policy or custom, "a plaintiff must establish a causal connection—an affirmative link—between the policy and the deprivation of his constitutional rights" (quotation marks omitted)).

Here, Plaintiff's papers, construed liberally, state one such policy, but his other allegations fail.

### b.  Five-Book Limit

The Court, as it did before, construes the Complaint to allege that "the rules of the Westchester County Jail permitted prisoners to have [no more than] five books in their cells." *See Corines*, 2022 WL 4341999, at *7; *see also Littlejohn v. City of New York*, 795 F.3d 297, 315 (2d Cir. 2015) (noting an "express rule or regulation" may give rise to *Monell* liability).[5]  As to the rule generally, Plaintiff states that it is "an unreasonable restriction of [his] First Amendment privilege[s]."  (Am. Compl. 8.)  He also states that Hurley notified him of the rule and that Correction Officers and Sergeants refused to deliver books that he should have received by falsely claiming that he had six books in his cell when in fact he had two.  (*Id*. at 13–14.) Finally, he alleges that the rule was not applied uniformly and another inmate's tally of books "exceeded one hundred."  (*Id*. at 8, 14.)  However, both Plaintiff's challenge to the rule itself and to the manner in which it is applied fall short.

First Amendment caselaw supports Plaintiff's right to access certain reading materials in prison.  *See Griswold v. Connecticut*, 381 U.S. 479, 482 (1965) ("The right of freedom of speech and press includes . . . the right to distribute, the right to receive, [and] the right to read . . . .");

---

[5] Defendants quote the "five-book *rule*" language and do not argue that it was a one-off restriction that applied only to Plaintiff.  (Defs' Reply 7–8 (emphasis added).)

*Beard v. Banks*, 548 U.S. 521, 522 (2006) (plurality) (recognizing the "constitutional importance" of an inmate's interest in access to "newspapers, magazines, and photographs" in prison); *see also Bell v. Wolfish*, 441 U.S. 520, 550 (1979) (recognizing "the First Amendment rights of MCC inmates" but upholding restriction on receipt of hardcover books because it was "a rational response" to "an obvious security problem"); *Burns v. Martuscello*, 890 F.3d 77, 86 (2d Cir. 2018) ("[W]hile inmates clearly retain protections afforded by the First Amendment, the Constitution sometimes permits greater restriction of such rights in a prison than it would allow elsewhere[.]" (alteration adopted) (quotation marks and citations omitted)).  That said, "[t]he fact of confinement and the needs of the penal institution impose limitations on constitutional rights, including those derived from the First Amendment, which are implicit in incarceration." *Jones v. N.C. Prisoners' Lab. Union*, 433 U.S. 119, 125 (1977).

When "a prison regulation impinges on inmates' constitutional rights," the Court applies a deferential standard: "the regulation is valid if it is reasonably related to legitimate penological interests."  *Reynolds v. Quiros*, 25 F.4th 72, 83 (2d Cir. 2022) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)).  The burden in that analysis "is not on the State to prove the validity of prison regulations but on the prisoner to disprove it."  *Id.* at 83–84 (quoting *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003)); *see also Al-Haj v. Singer*, No. 19-CV-3135, 2021 WL 4442854, at *4 (S.D.N.Y. Sept. 28, 2021) ("Plaintiff must at a minimum allege facts to address . . . whether the regulation has a valid, rational connection to a legitimate governmental interest" (quotation marks and citation omitted)); *Amaker v. Annucci*, No. 14-CV-9692, 2016 WL 5720798, at *4 (S.D.N.Y. Sept. 30, 2016) (rejecting a plaintiff's argument that "no such deference is owed because no valid objective has been put forward" (internal quotation marks omitted)).  That burden-of-proof inflection reflects the "substantial deference" accorded to prison administrators,

who "bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Overton*, 539 U.S. at 132; *see also Beard*, 548 U.S. at 525 (same); *Drew v. City of New York*, No. 18-CV-10719, 2022 WL 19705, at *4 (S.D.N.Y. Jan. 3, 2022) (same).

Plaintiff's allegations, construed liberally, fail to carry that burden. First, the five-book rule does not violate Plaintiff's First Amendment rights in the prison context. The right to read, even outside of prison, does not mandate unfettered access to books. For example, people do not have an "entitlement to a public library that circulates books without charge." *Johnson v. Daley*, 339 F.3d 582, 586 (7th Cir. 2003); *cf. Lu v. Hulme*, 133 F. Supp. 3d 312, 325 (D. Mass. 2015) (suggesting First Amendment concerns *do* come into play after city "intentionally open[s] [a] [l]ibrary up for the exercise of the First Amendment right to access information"). Similarly, it is not clear that the First Amendment entitles Plaintiff to a certain number of books in his cell. As Judge Easterbrook explained in analyzing a near-identical three-book rule:

> [The] County did not prevent [the plaintiff] from receiving and reading books. He could receive as many and read as much as he wanted. Setting a cap on how many books could be in his cell at once did not hamper his reading—he does not say that he could read four books in a day, so his ability to send finished books home and obtain more in the mail from friends and family could support even a voracious reading habit.

*Koger v. Dart*, 950 F.3d 971, 973 (7th Cir. 2020). Here, too, Plaintiff does not allege that the five-book rule, on its face, prevented him from accessing the reading materials of his choice or that he did not have enough to read at one time. Additionally, corrections facilities have legitimate reasons to impose such rules. One long-established reason is that "bound items" may be used to smuggle "drugs money, weapons, or other contraband" into the facility. *See Bell*, 441 U.S. at 549. Another "is that books can be used to contain or exchange coded messages." *Koger*, 950 F.3d at 974. Both concerns require officers to "leaf through every page of [] books

and magazines" during searches, *Bell*, 441 U.S. at 549, a process that becomes more onerous "[t]he more books a cell has," *Koger*, 950 F.3d at 974.  Because Plaintiff "does not allege that the [five-book rule] is excessive in relation to [a] government purpose, [his] claim fails."  *See Amaker*, 2016 WL 5720798, at *4 (quotation marks omitted).[6]

Second, Plaintiff's objections to how the policy is applied do not establish a *Monell* claim.  He does allege a dispute about the number of books in his cell, which resulted in mail being turned away.  (Am. Compl. 13–14.)  But that dispute, without more, "do[es] not state a claim that any defendant violated Plaintiff's constitutional rights."  *Corines*, 2022 WL 4341999, at *7.  Put differently, a dispute about *how* a policy applies to a particular person does not automatically give rise to a claim that the policy *itself* is unconstitutional.  That single instance is not enough to demonstrate a pattern of unconstitutionally restricting book access.  *See Brogdon*, 200 F. Supp. 2d at 427.  And Plaintiff does not allege that any named Defendant was responsible for turning his books away.  (*See* Am. Compl. 13 (alleging unnamed "Correction Officers and Sergeants" were responsible).)  Disparate application of the rule does not change that determination.  "[R]ules and regulations are never perfectly enforced," and the fact that this rule is enforced sometimes, but not others, does not enable the inference that "the prohibition isn't important."  *Koger*, 950 F.3d at 973; *see also Sauer v. Town of Cornwall*, No. 20-CV-04881, 2022 WL 4659687, at *6 (S.D.N.Y. Sept. 30, 2022) (holding allegations that town-defendant "selectively target[ed]" the plaintiff "does not amount to a policy, custom, or practice under

---

[6] Defendants appear to construe the Amended Complaint to state a free exercise claim. (*See* Defs' Reply 8.)  While the Court finds no mention of religion in Plaintiff's papers, it notes that access to religious reading materials may be reasonably limited in prison without violating the First Amendment.  *See Ryan v. Graham*, No. 14-CV-545, 2016 WL 11480154, at *7 (N.D.N.Y. July 5, 2016) (applying *Turner* factors and concluding "the plaintiff has not established that he requires *unfettered* access" to books needed to practice his religion), *report and recommendation adopted*, 2016 WL 4384749 (N.D.N.Y. Aug. 17, 2016).

*Monell*"); *cf. Buari v. City of New York*, 530 F. Supp. 3d 356, 398 (S.D.N.Y. 2021) (explaining

that a plaintiff may allege a "policy" or "custom" by sating that a practice was "formally

approved by an appropriate decisionmaker" or was "so widespread as to have the force of law"

(quotation marks omitted)).  Accordingly, to the extent the Complaint challenges the manner in

which the five-book rule was applied, that claim is dismissed as well.

c.  Remaining Allegations

Beyond the five-book rule, Plaintiff does not mention policies or customs that caused his

mail interference or retaliation claims.  (*See generally* Am. Compl.)  And Plaintiff's conclusory

references to the County's "fail[ure] in [its] responsibilities," (*id*. at 8), or his statement that

"[t]he actions of prison officials were caused by official or unofficial policies," (Pl's Opp. 8), are

plainly insufficient for the Court to infer one.  *See Lara-Grimaldi v. County of Putnam*, No. 17-

CV-622, 2018 WL 1626348, at *20 (S.D.N.Y. Mar. 29, 2018) (collecting cases) (dismissing

*Monell* claim where the plaintiff did not "cite or describe a policy officially promulgated by [the

County] or a specific act taken by a final policymaker").  Also insufficient are his general

statements that Defendants' actions were "continuous." (*See, e.g.*, Am. Compl. 5)  *Vasquez v.

City of New York*, No. 20-CV-4641, 2023 WL 8551715, at *5 (S.D.N.Y. Dec. 11, 2023) (noting

courts "disregard the use of conclusory allegations that do not provide additional support that a

plaintiff's experience is consistent with a larger pattern of similar conduct" (quotation marks

omitted)); *Bird v. County of Westchester*, No. 20-CV-10076, 2022 WL 2263794, at *12

(S.D.N.Y. June 23, 2022) (dismissing *Monell* claim where the complaint only "allege[d] broadly

that [the municipality] 'has engaged in a policy, custom, or pattern and practice'" of

unconstitutional conduct (citation omitted)); *Duncan v. City of New York*, No. 11-CV-3826, 2012

WL 1672929, at *2–3 (E.D.N.Y. May 14, 2012) (holding that "boilerplate statements" claiming

that New York City had a policy of tolerating excessive force were "insufficient to state a claim

16

of municipal liability under *Monell*"); *5 Borough Pawn, LLC v. City of New York*, 640 F. Supp. 2d 268, 300 (S.D.N.Y. 2009) (dismissing a *Monell* claim where the "plaintiffs fail[ed] to allege any facts showing that there is a [c]ity policy—unspoken or otherwise—that violate[d] the Federal Constitution").  Those statements equally fail to establish an unlawful practice or custom, as distinct from a "policy."  *See Vasquez*, 2023 WL 8551715, at *4 ("[C]ourts have dismissed custom or practice *Monell* claims that rely solely on one instance of conduct to prove the existence a persistent and widespread custom."); *see also Kirton v. Doe*, No. 20-CV-10860, 2023 WL 2586279, at *9 (S.D.N.Y. Mar. 21, 2023) ("An inmate cannot plausibly state a widespread practice simply by alleging his own experience and then extrapolating to the entire jail population."); *Ruiz v. City of New York*, No. 14-CV-5231, 2015 WL 5146629, at *12 (S.D.N.Y. Sept. 2, 2015) (holding allegations that "misconduct was repetitive, continuous and systematic" were insufficient to state a *Monell* "pattern and practice" claim).

Accordingly, Plaintiff's claims against Westchester County are dismissed.  "Because this court has already found that Plaintiff has failed to allege a custom or policy necessary to attach municipal liability, the [C]ourt need not consider [the merits of all] the underlying violations" at this juncture.  *See Krivoi v. City of New York*, No. 16-CV-5169, 2018 WL 5263449, at *7 (E.D.N.Y. Oct. 23, 2018); *see also Doe v. County of Rockland*, No. 21-CV-6751, 2023 WL 6199735, at *9 n.11, *10 (S.D.N.Y. Sept. 22, 2023) (holding that a plaintiff did not "sufficiently allege[] a widespread pattern or practice" and finding that it "need not consider the merits of the underlying Constitutional violation").

### 3.  Individual Defendants

As to the Individual Defendants, they argue that Plaintiff failed to allege that any of them was personally involved in a violation of his constitutional rights.  (Defs' Mem. 12–15.)  Here too, the Court agrees.

"It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Sterling v. Akinyombo*, No. 20-CV-10804, 2022 WL 2657223, at *4 (S.D.N.Y. July 8, 2022) (citing *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)). "[A] plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (citation and quotation marks omitted); *see also Leneau v. Ponte*, No. 16-CV-776, 2018 WL 566456, at *15 (S.D.N.Y. Jan. 25, 2018) (dismissing allegations against a defendant for lack of personal involvement because the "[p]laintiff's general allegation that all defendants were involved in the alleged constitutional violations does not rescue the claims against" a particular defendant (quotation marks and citation omitted)). Accordingly, "a plaintiff may not rely on a special test for supervisory liability" instead, "[t]he violation must be established against the supervisory official directly." *Tangreti*, 983 F.3d at 616–18.

### a.  Grievances

Starting with Reyes-Rhodes, Delgrosso, Vollmer, Ashterman, and Hurley, Plaintiff alleges that all five officers did not properly address grievances regarding mail and law library access. (Am. Compl. 12.) Specifically, he states that Reyes-Rhodes failed to respond to several grievances, (*id*. at 9–10, 12), that Ashterman "failed to adequately investigate and resolve" other grievances, (*id*. at 15), and that Delgrosso and Vollmer improperly denied yet another grievance, (*id*. at 10–11).[7] Plaintiff alleges that Hurley notified him of the five-book restriction, and "failed to investigate and resolve the problem" regarding his receipt of books. (*Id*. at 14.)

---

[7] The Amended Complaint's only reference to Vollmer is that he and Delgrosso, "as chief administrative officers of the Jail failed in their responsibilities to protect plaintiff's right to due process and equal protection in addition to his free access and flow of his mail." (Am. Compl. 8.) As to Vollmer, that general statement about his administrative or supervisory responsibilities

As the Court explained in its prior Order, however, "[a] prisoner has no constitutional right to a prison grievance procedure or to have his grievances investigated." *Corines*, 2022 WL 4341999, at *9 (quoting *Hayes v. County of Sullivan*, 853 F. Supp. 2d 400, 434 (S.D.N.Y. 2012)).  While those procedures are "created by state law" they are "not required by the [federal] Constitution, and consequently[,] allegations that prison officials violated those procedures [do] not give rise to a cognizable § 1983 claim." *Williams v. Orange Cnty. Jail*, No. 23-CV-0764, 2023 WL 5016972, at *2 (S.D.N.Y. Aug. 7, 2023) (alterations in original) (quoting *Harris v. Westchester Cnty. Dep't of Corr.*, No. 06-CV-2011, 2008 WL 953616, at *5 (S.D.N.Y. Apr. 3, 2008)); *see also Roseboro v. Gillespie*, 791 F. Supp. 2d 353, 380 (S.D.N.Y. 2011) (noting that prisoners "do not have a due process right to a thorough investigation of grievances" (internal quotation marks and citation omitted)).  Relatedly, allegations about events "*after* a constitutional violation has already occurred" do not establish personal involvement in the underlying violation, assuming there is one.  *See Weston v. Bayne*, No. 22-CV-621, 2023 WL 8435998, at *6 (N.D.N.Y. June 28, 2023) (quotation marks omitted), *report and recommendation adopted*, 2023 WL 8183219 (N.D.N.Y. Nov. 27, 2023); *see also Rahman v. Fisher*, 607 F. Supp. 2d 580, 585 (S.D.N.Y. 2009) ("Receiving post hoc notice does not constitute personal involvement in the unconstitutional activity . . . .").  Accordingly, Plaintiff's allegations that these five defendants failed to adequately investigate or respond to Plaintiff's grievances do not state a claim.

---

is insufficient.  Plaintiff must explain how "each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

b.  Outgoing Mail

Plaintiff alleges that Lopez failed to deliver a mail receipt for a piece of legal mail and
failed to respond to grievances regarding that same issue.  (Am. Compl. at 9; *see also* Pl's Opp.
2–3.)

"To state a claim for denial of access to the courts — in this case due to interference with
legal mail — a plaintiff must allege that the defendant took or was responsible for actions that
hindered a plaintiff's efforts to pursue a legal claim."  *Davis v. Goord*, 320 F.3d 346, 351 (2d
Cir. 2003) (citation and quotation marks omitted); *see also Bonie v. Annucci*, No. 20-CV-640,
2023 WL 2711349, at *7 (S.D.N.Y. Mar. 30, 2023) (same).  "[A] plaintiff must allege not only
that the defendant's alleged conduct was deliberate and malicious, but also that the defendant's
actions resulted in actual injury to the plaintiff such as the dismissal of an otherwise meritorious
legal claim."  *Cancel v. Goord*, No. 00-CV-2042, 2001 WL 303713, at *4 (S.D.N.Y. Mar. 29,
2001) (citing *Lewis v. Casey*, 518 U.S. 343, 351 (1996)).  As relevant here, actual injury
encompasses "claims that systemic official action frustrates a plaintiff . . . in preparing and filing
suits at the present time."  *See Christopher v. Harbury*, 536 U.S. 403, 413–14 (2002).

Plaintiff discusses a piece of legal mail that was not delivered on time in his state
criminal case, but several facts are missing that are necessary to state a claim.  (*See* Am.
Compl. 9 (alleging "Application for Bail and Motion to Dismiss Indictment" were never
delivered).)  First, Plaintiff does not explain how Lopez's failure to provide receipts hindered his
ability to pursue claims in that case.  He notably does not allege that Lopez interfered with his
mailings, tore them up, or did anything else "malicious" that injured him.  *See Banks v. County
of Westchester*, 168 F. Supp. 3d 682, 692 (S.D.N.Y. 2016) (listing required allegations for denial
of access claim).  Instead, Plaintiff levels blame on "mailroom employees," not Lopez, for failing
to process his filing.  (Pl's Opp. 3.)  Second, while Plaintiff states that his motion (or "petition")

was delayed, and that delay "resulted in damage . . . due to his inability to timely petition the

Court for early release," (Pl's Opp. 3), "[m]ere delay in being able to work on one's legal action"

does not constitute "actual injury" giving rise to a constitutional violation.  *See Banks*, 168

F. Supp. 3d at 693 (quoting *Davis*, 320 F.3d at 352 (internal quotation marks omitted)).  The

closest Plaintiff gets is stating that Defendants' intentional delay rendered his release application

moot.  (Pl's Opp. 2–3.)[8]  But "the injury requirement is not satisfied by just any type of frustrated

legal claim . . . the tools required to be provided are those that the inmates need in order to attack

their sentences, directly or collaterally" and "to challenge the conditions of their confinement."

*Kelsey v. Rutledge*, No. 21-CV-4298, 2022 WL 2110436, at *4 (S.D.N.Y. June 10, 2022)

(alterations adopted) (quoting *Lewis*, 518 U.S. at 354).  Impairment of "any *other* litigating

capacity," is simply "once of the incidental . . . consequences of conviction."  *Id. see also Roesch

v. Sullivan*, No. 15-CV-247, 2018 WL 1406918, at *2 n.4 (S.D.N.Y. Mar. 20, 2018) (same).

Cementing the lack of injury is the fact that Plaintiff's motion was ultimately filed, (*see* Am.

Compl. 9 n.4), and apparently denied, (*see* Zeitler Decl., Ex. C (New York State Supreme Court

Appellate Division Order denying Plaintiff's Motion for stay of execution and release).)  *See

Arnold v. Perez*, No. 12-CV-1677, 2013 WL 1196677, at *2 (D. Conn. Mar. 22, 2013) (holding

that "delayed delivery" of legal documents did not constitute "actual injury" and explaining that

"[the] plaintiff would have suffered an actual injury if . . . he was unable to file a complaint

alleging actionable harm"); *see also Kaminski v. Semple*, 796 F. App'x 36, 39 (2d Cir. 2019)

(summary order) (affirming holding that plaintiff "failed to allege . . . actual injury relating to his

habeas corpus petition" because, among other things, "he was able to file and prosecute a

---

[8] It is not clear whether Plaintiff's reference to an "Emergency Application for expedited determination of his request" is a distinct piece of undelivered legal mail, or whether it was part of the motion discussed in the Amended Complaint.  (*See* Pl's Opp. 2 (emphasis omitted).)

[different] petition for a writ of mandamus"); *Ziemba v. Armstrong*, No. 02-CV-2216, 2004 WL 1737447, at *2 (D. Conn. July 30, 2004) (explaining that, to demonstrate actual injury, "the inmate must show that he was unable to file the initial complaint or petition"); *Odom v. Kerns*, No. 99-CV-10668, 2002 WL 31059341, at *4 (S.D.N.Y. Sept. 16, 2002) (holding that the "barrage of papers filed [by the plaintiff] demonstrates that [the plaintiff's] access [to the courts] has not been denied"). Accordingly, Plaintiff's claims against Lopez are dismissed.

### c.  Retaliation

Toward the end of the Amended Complaint, Plaintiff alleges that he was denied access to the law library in retaliation for filing grievances. (Am. Compl. 14–15.) As the Court already explained, that allegation, alone, is insufficient to state a § 1983 retaliation claim. *Corines*, 2022 WL 4341999, at *5. Plaintiff has not explained why this conduct "would deter a similarly situated individual . . . from exercising his or her constitutional rights," he has not identified "any particular defendant who was personally involved in retaliating against him," and he does not discuss the "consequences" of any lack of access. *Id*. (explaining requirements of First Amendment retaliation claim).

Additionally, Plaintiff has not established a causal connection between his grievances and reduced library access. *See Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (noting there must be "a causal connection between the protected speech and the adverse action"). He does not, for instance, allege that adverse action followed his grievances closely in time, nor does he plead statements demonstrating "animus" on the part of Defendants. *See Smith v. County of Suffolk*, 776 F.3d 114, 118 (2d Cir. 2015). Plaintiff's papers, moreover, do not contain enough material to infer such a connection. Instead, Plaintiff relies solely on the conclusory allegation that he "was denied access in retaliation for the numerous grievances he submitted," (Am. Compl. 15), which is insufficient to state a claim, *Gunn v. Bentivegna*, No. 20-CV-2440, 2021

WL 4084575, at *5 (S.D.N.Y. Sept. 8, 2021) ("First Amendment retaliation claims brought by prisoners must 'be supported by specific and detailed factual allegations, not stated in wholly conclusory terms.'" (quoting *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015)).  Plaintiff thus fails to state a retaliation claim against any of the individual defendants.

### d.  Incoming Mail

Finally, Plaintiff alleges that he did not receive newspaper and magazine subscriptions on time, and that some editions were never delivered.  (Am. Compl. 3–5.)  The Court explained before that, to state a First Amendment claim, Plaintiff had to allege "which defendants were personally involved" and either that there were "regular" and "substantial" problems with his mail or that defendants "deliberate[ly]" tampered with it.  *See Corines*, 2022 WL 4341999, at *7. Plaintiff does allege more extensive interference with his mail, explaining that both daily and weekend editions were not delivered while he was incarcerated.  (Am. Compl. 4–5.)  But he does not point to a responsible Defendant.  Instead, he states only that Delgrosso and Vollmer should have known that officers they supervise violated Plaintiff's rights.  (*Id.*)  As the Court stated before, "[a] defendant may not be held liable under [§] 1983 solely because that defendant employs or supervises a person who violated the plaintiff's rights."  *Corines*, 2022 WL 4341999, at *3 (citing *Iqbal*, 556 U.S. at 676 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior.")); *see also Tangreti*, 983 F.3d at 620 ("To hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability."); *Spavone v. N.Y.S Dep't of Corr. Serv.*, 719 F.3d 127, 135 (2d Cir. 2013) ("It is well settled in this Circuit that personal involvement of defendants in the alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." (internal quotation marks omitted))

### 4. Leave to Amend

Defendants seek dismissal with prejudice, arguing Plaintiff has already been put on notice of the deficiencies in his Complaint.  (Defs' Reply 7–8.)  "Generally, leave to amend should be freely given, and a pro se litigant in particular should be afforded every reasonable opportunity to demonstrate that he has a valid claim."  *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (internal quotation marks omitted).  "A pro se complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."  *Id*. (internal quotation marks omitted).  The decision of whether to grant or deny leave to amend is, however, governed by the "sound discretion of the district court," such that the district court may deny leave "for good reason, including futility."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007); *see also Tocker v. Philip Morris Cos.*, 470 F.3d 481, 491 (2d Cir. 2006) (noting that "leave to amend a complaint may be denied when amendment would be futile").

Plaintiff, at the end of his Opposition, requests leave to amend regarding the constitutionality of the five-book rule and "the effect of retaliation" for his grievances.  (Pl's Opp. 8).  But the Court has already granted leave to amend once, (*see* Order (Dkt. No. 9)), and it has considered both issues at length.  First, the Court doubts that either claim is timely or that the non-time-barred allegations are enough to state a claim.  *See supra* § II.B.1.  Second, the Court cannot see how an amendment regarding the five-book rule would overcome the substantial deference accorded to similar prison regulations.  That "problem with [Plaintiff's] cause[] of action [is] substantive; better pleading will not cure it."  *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Lastra v. Barnes & Noble Bookstore*, No. 11-CV-2173, 2012 WL 12876, at *9 (S.D.N.Y. Jan. 3, 2012) (dismissing with prejudice a pro se complaint that was "not simply

24

'inadequately or inartfully pleaded,' but rather contain[ed] substantive problems such that an amended pleading would be futile").  Third, with respect to retaliation, the Court "previously detailed the deficiencies in [Plaintiff's] original Complaint," yet Plaintiff responded with only a cursory allegation of retaliation.  (*See* Am. Compl. 15.)  The Second Circuit has singled out retaliation claims explaining that they demand "skepticism and particular care because virtually any action taken against a prisoner by a prison official . . . can be characterized as a constitutionally proscribed retaliatory act."  *See Bacon v. Phelps*, 961 F.3d 533, 543 (2d Cir. 2020) (quotation marks omitted).   Because the Amended Complaint "fails to address those exact same deficiencies," "dismissal with prejudice is appropriate."  *See Cook v. Dewitt*, No. 19-CV-2780, 2022 WL 580774, at *4 (S.D.N.Y. Feb. 25, 2022) (dismissing pro se amended complaint with prejudice); *Tsinberg v. New York*, No. 20-CV-749, 2021 WL 1146942, at *12 (S.D.N.Y. Mar. 25, 2021) (dismissing pro se plaintiff's claims with prejudice and without leave to amend where he "already had one opportunity to amend, and did so after" being made aware of pleading deficiencies); *Adams-Flores v. City of New York*, No. 18-CV-12150, 2021 WL 918041, at *5 (S.D.N.Y. Mar. 10, 2021) (denying pro se plaintiff leave to amend a second time); *Coon v. Benson*, No. 09-CV-230, 2010 WL 769226, at *4 (S.D.N.Y. Mar. 8, 2010) (adopting report and recommendation in full) (same).

### 5.  John Doe Defendants

Plaintiff also alleges that John Doe mailroom employees were involved in his mail-related claims.  (*See, e.g.*, Am. Compl.  13.)  Those Defendants "ha[ve] not appeared in this action and thus ha[ve] not filed a motion to dismiss."  *See Ali v. Ramos*, No. 16-CV-1994, 2018 WL 1353210, at *1 (S.D.N.Y. Mar. 14, 2018).  (*See generally* Dkt.)  When the Court ordered service, it directed Defense counsel to identify the John Does and advised Plaintiff that he should file a second amended complaint within 30 days of receiving that information.  (*See* Order (Dkt.

No. 11).)  Defense counsel responded with the requested information on March 9, 2023, (*see* Ltr. from Phoenix Marino, Esq. to Court (Mar. 9, 2023) (Dkt. No. 15)), but Plaintiff did not amend to substitute the Doe Defendants, (*see* Dkt.).

Although declining to substitute the John Doe Defendants supports dismissal for failure to prosecute, *see Mahone v. City of New York*, No. 13-CV-8014, 2015 WL 427422, at *1 (S.D.N.Y. Feb. 2, 2015), the Court did not specifically warn Plaintiff that dismissal was possible, *see Guggenheim Capital, LLC v. Birnbaum*, 722 F.3d 444, 452 (2d Cir. 2013) (stating that, in the Rule 37 context, "a court abuses its discretion if it dismisses a case without first warning a pro se party of the consequences of failing to comply . . . ."). Accordingly, Plaintiff is ordered to show cause why claims against the John Doe mailroom officers should not be dismissed. If he does not do so within 30 days, the Court will dismiss claims against those Defendants. *See Mahone*, 2015 WL 427422, at *1 n.1 ("Although not explicitly authorized by Federal Rule of Civil Procedure 41(b), courts may also dismiss cases for failure to prosecute sua sponte." (italics omitted)); *Link v. Wabash R. Co.*, 370 U.S. 626, 629 (1962) ("The authority of a federal trial court to dismiss a plaintiff's action with prejudice because of his failure to prosecute cannot seriously be doubted.").

### III.  Conclusion

For the foregoing reasons, Defendants' Motion is granted and Plaintiff's claims against the named Defendants are dismissed with prejudice.  Plaintiff is directed to show cause why claims against the John Doe Defendants should not be dismissed via a letter to the Court within 30 days of this Opinion and Order.  If he fails to do so, those claims will be dismissed with prejudice.

The Clerk of Court is respectfully directed to terminate the pending Motion, (Dkt. No. 31), and to mail a copy of this Opinion and Order to Plaintiff at the address listed on the docket.

SO ORDERED.

Dated:    March 25, 2024
       White Plains, New York

                                                   KENNETH M. KARAS
                                         United States District Judge